HOWARD S. PALMER and Others, etc., Plaintiffs, *v.* ROYAL CADILLAC SERVICE, INC., and Others, Defendants.

Supreme Court, Special Term, New York County, June 27, 1939.

*Edward R. Rumley* [*Edward J. Moore* and *Thomas B. Jewell* of counsel], for the plaintiffs.

*Lionell Bennett*, for the defendants.

BERNSTEIN, J. The plaintiffs, as trustees of the property of the New York, New Haven and Hartford Railroad Company, debtor in proceedings for reorganization under section 77 of the National Bankruptcy Act (U. S. Code, tit. 11, § 205), operate a railroad between the points in Westchester county hereinafter referred to and the city of New York. The defendants are licensed owners or operators of taxicabs residing in Westchester county.

For several years past the people of Harrison, Mamaroneck and Larchmont who had occasion to travel to and from New York city were served by the New York, Westchester and Boston Railway, a subsidiary of the debtor, having its western terminus at East One Hundred and Thirty-third street in the borough of Bronx. In October, 1937, that road ceased operation, and those people had to travel to and from the city either by the debtor railroad or by other vehicular conveyances. In that situation the defendants and several owners of taxicabs undertook to employ their cars in carrying those people to and from New York city at a fixed rate of fare.

The method of operation of these cars followed a set plan. The defendants and their associates banded together under the name of an organization known as Taxi Owners' Association. This association opened up offices or waiting rooms at fixed locations in Harrison, Mamaroneck and Larchmont and at 2051 Boston road in New York city, which adjoins the One Hundred and Seventy-seventh Street subway station. Single and return tickets were sold and collected at a fare of forty cents and sixty cents respectively between Harrison and New York, and at a fare of thirty-five cents and fifty cents respectively between Mamaroneck or Larchmont and New York. The cars were stationed at the various terminals and left these terminals as they were filled up, passing over a set route and stopping at each of the association's offices for the purpose of receiving and discharging passengers. All the proceeds from the operation of these cars were received by the association which, after the payment of rents, telephone service, clerical hire and other expenses of the maintenance of its offices, distributed the net profits *equally* amongst its members, regardless of the number of passengers each of them may have carried.

The plaintiffs claim that the operation of the defendants' cars in the manner described, over a route paralleling and competing with the railroad's route, constitutes the operation of an omnibus line without local franchises or consents and without certificates of public convenience and necessity, in violation of the provisions of the Public Service Law and the Transportation Corporations Law of the State and the Administrative Code of the City of New York, and entitles them to injunctive relief. (*Huff* v. *City of New York*,

202 App. Div. 425; *Westchester Electric R. R. Co.* v. *Polowitz*, 216 id. 845; *International R. Co.* v. *Barone*, 246 id. 450.)

Section 63-d of the Public Service Law in part provides: " No omnibus corporation shall operate an omnibus line without first having obtained the permission and approval of the Commission having jurisdiction and its certificate of public convenience and necessity."

Section 65 of the Transportation Corporations Law in part provides: " Any person or corporation owning or operating a stage, omnibus line or motor vehicle line or route * * * wholly or partly upon and along any street, avenue or public place in any city, shall be deemed to be a ' common carrier ' as that term is used in the Public Service Commission Law, and shall be required to obtain a certificate of convenience and necessity for the operation of the route or vehicles proposed to be operated."

Section 362–1.0 of the Administrative Code of the City of New York (Laws of 1937, chap. 929) provides: " It shall be unlawful for any omnibus route or routes for public use * * * to be operated in or upon any street within the city until and unless a franchise or right therefor shall be obtained from the board of estimate."

The plaintiffs' right to relief depends upon whether the defendants operate an omnibus line or motor vehicle route requiring the certificates, consents and franchises specified in the foregoing cited statutes, or whether they operate only a taxicab service authorized under their licenses. On that question resort must be had to the definition of the term " omnibus line."

Subdivision 28 of section 2 of the Public Service Law states it as follows: " The term ' omnibus line ' when used in this chapter, means a motor vehicle or motor vehicles operated for the use and convenience of the public, usually along the same route or between stated termini, or on a fixed or stated schedule, carrying passengers for hire * * *. It does not include * * * motor vehicles operated in what is commonly known as taxicab service, unless such service becomes or is held out to be regular service between stated termini."

The plan under which the defendants operate their cars, the routes that they follow, the termini that they maintain, the fixed fare rates that they charge, the tickets that they sell, all serve to establish or hold them out as engaging in a regular omnibus service within the meaning of the statutes. As such, their conduct is illegal, whether they be the owners or operators of the cars (Public Service Law, § 2, subd. 29), and may be enjoined in a proper action.

The plaintiffs claim that this illegal operation of the defendants' cars is in competition with their railroad and is causing them material damage. A finding on that claim is unnecessary, however, in view of the fact that their railroad company is a resident and taxpayer of the counties of Bronx and Westchester, and as such is entitled to maintain the action. (*Westchester Electric R. R. Co.* v. *Polowitz*, 216 App. Div. 845; *South Brooklyn R. Co.* v. *Schayes*, 159 Misc. 647, 650.)

Judgment is directed for the plaintiffs accordingly. Submit same for signature and entry on three days' notice.