CYRUS HADLEY AND MARIA E. HADLEY, *his Wife*, v. TIMOTHY
CROSS.

*Liability of bailors of carriages to hire for defects in the same.*
*Bailment.   Due Diligence.*

Livery-stable keepers, and others, who let horses and carriages for hire, are
answerable to the hirer for injuries which happen by reason of defects in
carriages, which might have been discovered by the most careful and
thorough examination, but not for an injury which happens in consequence
of a hidden defect, which could not, upon such examination, have been
discovered.

In a business involving the personal safety and lives of others, due care and
diligence are nothing less than the most watchful care and the most active
diligence.   POLAND, CH. J.

CASE to recover for an injury to the plaintiff, Maria E. Had-
ley, alleged to have happened in consequence of the letting by
the defendant to the plaintiff, Cyrus Hadley, of a horse, wagon,
and harness, to go on a journey, which wagon was unsafe and insuf-
ficient for that purpose.   Plea, the general issue, and trial by jury
at the March term, 1861, in Washington County, PECK, J.,
presiding.

It appeared that the plaintiff, Cyrus Hadley, hired of the
defendant, who was a livery-stable keeper, a horse, wagon, and
harness, to go on a journey with his wife, and that while on such
journey, in consequence of the breaking of the spring to the
snap on the thill of the wagon to which the hold-back part of the
harness was attached, the horse was frightened and capsized the
wagon, throwing out the plaintiff, Maria E. Hadley, and seri-
ously injuring her.   The testimony on the part of the plaintiffs
tended to prove that the broken spring had the appearance, from
rust and other indications, of having been nearly broken off for
a long time, and before the hiring of the wagon from the defend-
ant by the plaintiffs.

The plaintiffs requested the court to charge the jury that it
was the duty of the defendant by law to furnish the plaintiffs a
carriage and harness adequately strong and sufficient for the
journey, and which, with ordinary use, would not fail on the
journey for which it was hired.

The court refused to charge as requested, but instructed the jury that it was the duty of the defendant, by law, to furnish the plaintiff with a carriage and harness reasonably strong, safe, and secure for the journey for which they were hired, (with one qualification named below) ; that it was not a sufficient compliance on the part of the defendant with his duty in this respect, merely to provide himself with safe and secure carriages and harnesses, and continue to let them from time to time without examination, till they should break or give way, and then repair and supply them ; that it was his duty, by prudent examination and careful and particular inspection from time to time, to keep them reasonably safe and secure, so that they should be so when let ; that it was not sufficient that they were apparently so to a casual observer on a general view without a particular examination ; if they were suffered to go out to a customer with a defect that could be discovered by a prudent, careful, particular, and critical examination by a man reasonably skilled in such matters, which would render them unsafe, the defendant would be responsible for the consequences ; that if he should suffer them to go out without such inspection, it would be at his peril as to such defects, if there should happen to be such at the time he delivered them ; that if there was any secret defect which he neither knew of nor supposed to exist, and which could not be observed or discovered by such prudent, careful, particular, and critical examination, for such defects he would not be responsible ; that it was not sufficient that the defendant, when he let the horse and carriage, believed it was safe ; but the question was, how it was in fact ; that it was no excuse for the defendant that he did not know of any defect if he could have known it by such examination and inspection as above described ; and if so, it was the same as if he did know it, so far as related to the plaintiff's right to recover.

To the refusal of the court to charge as requested, and to the charge as above detailed, the plaintiffs excepted.

*Heaton & Reed*, for the plaintiffs.

*O. H. Smith* and *Redfield & Gleason*, for the defendant.

---

Hadley *v.* Cross.

---

POLAND, CH. J. . It is conceded on both sides that the same rule of duty and diligence should be applied to the letter of horses and carriages for hire, for others to drive, as to coach owners or other passenger carriers, who furnish drivers as well as teams. The plaintiffs claim that the law holds both responsible for the absolute sufficiency of carriages, harnesses, etc., and that if the driver or passenger receives an injury by reason of a defective carriage or harness, he is entitled to redress, though the defect was not visible, and could not be discovered by the most careful examination.

The defendant claims they are only liable for the want of due care and reasonable diligence.

It seems now universally settled in this country that the strict rule of liability applied to common carriers of goods, does not apply to carriers of passengers. While the carrier of goods is liable for any loss or injury that may happen to them, even with no fault on his part, unless occasioned by the act of God or the public enemy, the carrier of passengers is only liable for negligence. It is not needful now to discuss the policy on which this difference is founded.

Some of the books and cases say the carrier of passengers is only liable for the want of due care, or reasonable care ; others say they are bound to extraordinary care, and the highest diligence, to ensure the safety and security of their passengers.

But we apprehend there is no real difference in the meaning of, these terms as applied to the subject. In any business involving the personal safety and lives of others, what is due care, reasonable diligence ? Clearly nothing less than the most watchful care and the most active diligence ; anything short of this is negligence and carelessness, and would furnish clear ground of liability if an injury was thereby sustained.

The case of *Ingalls* v. *Bills et al.*, 9 Met. 1, settles what we deem to be the true view of the law on this subject. In that case all the authorities are carefully reviewed, and the English cases now relied on by the plaintiff as establishing the principle of absolute liability, are shown not to support it, though the language of some of the judges might seem to countenance such a doctrine. The principle established by that case is stated by the

reporter as follows: "Proprietors of coaches, who carry passengers for hire, are answerable to a passenger for an injury which happens by reason of a defect in a coach, which might have been discovered by the most careful and thorough examination, but not for an injury which happens by reason of a hidden defect, which could not, upon such examination, have been discovered." The principle settled by that case seems to have been carefully followed by the judge who tried this case, in his instructions to the jury.

The doctrine of the plaintiffs by which the defendant would be held liable for defects in his carriages and harnesses, which he did not know, and which he could not have discovered by the most careful scrutiny, we think would be grossly unjust, and it is one not ordinarily applied to any other of the dealings and relations of society.

The judgment is affirmed.